W. WAYNE WHITE AND LETHA B. WHITE, APPELLANTS, v. MEADOW
PARK LAND COMPANY, A CORP., RESPONDENT.—213 S. W. 2d 123.

Kansas City Court of Appeals.   Opinion delivered June 14, 1948.

*J. M. Fisher* for appellants.

684

*Winger, Barker & Winger* and *Frank P. Barker* for respondent.

CAVE, P. J.—This appeal involves a suit in which plaintiffs (appellants) seek to enjoin defendant (respondent) from establishing an "alley" across the rear 14 feet of plaintiffs' lot. At the trial below the court found against the plaintiffs and dismissed their petition and they perfected their appeal.

The record discloses that on January 22, 1935, defendant leased to one Harry Allshouse Lot 16 in Block 6, Meadow Park Addition to Kansas City. The lease was for 10 years with option to purchase at any time within that period. The lease was later assigned to plaintiffs. It contained this provision: "The lessor reserves the right to establish an alley fourteen (14) feet wide across the rear of the above described lot at any time". On February 25, 1944, plaintiffs exercised the option to purchase and defendant executed a deed conveying Lot 16 to them, which deed contained this reservation: "Grantor reserves the right, at any time hereafter, to establish an alley for the use of the public across the east fourteen (14) feet of the premises above described." At all times here involved defendant owned Lots 13, 14 and 15, which are vacant and are immediately south of Lot 16, and it also owned Lot 17, which is vacant and immediately north of Lot 16. For clarity, we insert opposite this page a plat showing the location of the lots and proposed alley.

Defendant had leased Lot 17 to Milgram Food Stores, Inc., which was to be used "to provide parking space for lessee's (Milgram's) customers, said parking space to be approximately 55 by 124 feet." This lease expired December 31, 1946, and had not been renewed. However, the lot continued to be used as parking space. Lots 13, 14 and 15 had remained unused vacant lots until shortly before this suit was filed when defendant had them zoned by the city "as a free customer parking lot for passenger automobiles only. Exits and entrances are to be from Brookside Plaza only and no entrance or exits shall be allowed from Meyer Boulevard. * * * Permission for the indicated use is for a 5 year period only or for such time as the private parking lot south of the Milgram Store (Lot 17) continues to be used for its present off-street parking purposes."

Plaintiffs' Lot No. 16 was 50 feet wide and 124 feet long. It fronts to the west on Brookside Plaza, a public street that runs north and south. The lot extends eastward 124 feet to the property line of all other lots in that block. On it was a small brick bungalow type building used for dental offices, but this building does not extend to or over the 14 foot strip involved. At the time of trial there had been

no public alley established or dedicated along the east boundary line or on any other part of the defendant's Lots 13, 14, 15 and 17. In other words, the 14 foot strip across the east end of plaintiffs' lot would not connect with any other public outlet but would merely extend from the rear property line of defendant's Lot 15 to the rear property line of its Lot 17.

The sharp line of controversy revolves around the construction of the reservation in the deed. Plaintiffs contend that the reservation means that the defendant has the right to, and, if exercised, must establish a *public alley;* but that the defendant does not intend doing so, and is proposing to open the 14 foot strip only as a passageway or private alley from its Lot 17 to Lots 13, 14 and 15; that the alley will not connect with any other alley, street or passageway and is, therefore, not a *public alley.* Defendant contends "that it has the right to establish the alley in question connecting the free parking lots for the enjoyment of the public using these lots, whether such alley be legally classified as a 'public' or a 'private' alley." In further clarification of defendant's position we note its answer pleads, in effect, that the reservation in the deed was intended to reserve and does reserve to it the right to establish either a *private* alley for the use of the public or to dedicate a public alley across the 14 foot strip; but that at this time it proposes to establish only a *private* alley for the use of the public *across plaintiffs' premises.* Mr. Groves, secretary and treasurer of defendant company, testified that at this time defendant had no intention of connecting this 14 foot strip with any other established alley or street; that the only ingress and egress to this alley would be over defendant's vacant lots now being used for parking purposes.

With this general statement of the surrounding circumstances we approach the question, what are defendant's rights under the reservation? The word "alley", when not qualified by the term "private", is conventionally understood, in its relation to towns or cities, to mean a narrow street in *common use.* Bailey v. Culver, 12 Mo. App. 175, 183. In 25 Am. Jur., Sec. 8, p. 344, it is said: "Where the word 'private' is prefixed to the term, presumably the alley is private; but where not so qualified, the inference is to the contrary." In the instant case the word "alley" does not stand unqualified but is followed by the clause "for the use of the public * * *." Under the facts in this case the *public* has not acquired and cannot acquire any *right* to the use of this alley. The public is merely using the four adjoining vacant lots as parking space by *sufferance* of the defendant. It could, at any time, prohibit such use by the public; or it could sell any of such lots to a third person who could prevent such use. It is the *right* of the public to use a passageway, which makes it *public,* and not the mere fact that the public does use it. In re Cox et al.,

250 NYS 528, the court states this principle so clearly that we quote (530):

"It has been truly said it is not the amount of travel upon a highway which distinguishes it as a public, instead of a private, road. A private road might have the larger amount. It is the *right* to travel upon it by all the world, and not the exercise of the right, which makes it a public highway. *A public highway to which the public has not the right of access would be an impossible creation;* and so a public use might generally be defined as the use which each individual might of right demand upon the same general terms, and for the same general purposes, as any other individual." (Italics ours).

In McConnell v. Rathbun et al., 46 Mich. 303, the court was construing a provision in a deed which granted "a right of way of an alley 10 feet wide on rear end of said 82 feet." The grantee in that deed was seeking to force a passageway across an adjoining lot to a public street and, in granting this relief, the court said (306):

"The easement granted was 'a right of way of an alley'; and this *ex vi termini* implies, we think, a passage-way leading away from the land conveyed. *It would be a misnomer to call a mere open space ten feet wide in the rear of this land, shut in on all other sides by lands over which the grantee had no right to pass, either a right of way or an alley.* It might be a convenient space to use for some purposes, but certainly not for a right of way. The suggestion that the passageway intended was merely a rear passage from one of the stores McConnell intended to erect to the other has no plausibility. An alley for such a purpose would be of little or no value: the alley is needed for access to and from the street with teams." (Italics ours).

We are of the opinion that the language of the reservation requires the defendant to establish a *public* alley, a segment of which will be the 14 foot strip across plaintiffs' lot; otherwise, this strip would be completely closed for *public use*, except by *permission* of the defendant or its grantees. The right to establish an alley *for the use of the public* carries with it the responsibility of providing a way, and the *right* in the public to reach the "alley". Since defendant's answer and evidence are to the effect that it does not intend, at the present time, to connect this 14 foot strip with any public street, alley or passageway, it cannot become a *public* alley.

However, defendant insists that it has the right, under the reservation, to establish a *private* alley for the use of that segment of the public using the parking lots. We do not believe the language of the reservation is subject to such a construction. If the language of a deed or other written instrument is clear and unambiguous, the intention of the parties is gathered from the instrument. It is what the grantor said and not what he intended to say. Triplett v. Trip-

lett, 332 Mo. 870, 60 S. W. (2d) 13, 15; Rummerfield et al. v. Mason, 352 Mo. 865, 179 S. W. (2d) 732. In the instant case if the defendant had intended to reserve the right to establish a *private* alley, it would have been an easy matter to have so declared. It is not within our province to read into the deed a limitation which is not expressed, and this is certainly true when the reservation itself defines the type of alley to be established—such as "for the use of the public * * *." But defendant argues that if it has the right to establish the 14 foot strip as a *public* alley, then plaintiffs cannot complain if it makes a less burdensome use of the strip by establishing only a *private* alley. This argument is advanced on the theory that a dominant tenant is not required to make the full use of his right; he may not make a more burdensome use than his right permits, but he may make a less burdensome use. That is a correct statement of a general principle of law. 28 CJS, Easements, Sec. 87, p. 766; Stegman v. City of Fort Thomas, 273 Ky., 309, 116 S. W. (2d) 649. But we do not believe that general principle is applicable in the instant case, because, as we have said, this *reservation* requires the defendant to establish a *public* alley and not a *private* alley. In the Stegman case, *supra*, the city opened the street for *pedestrians only*, and the court held that was a compliance with the grant because it was, nevertheless, a *public* highway even though used by pedestrians only, and approved the above general principle of law. However, the use in that case made it a *public* and not a *private* way. Its character was not changed. That would not be true in the instant case. We cannot say, under the facts in this case, that the establishment of a *private* alley would be less burdensome on plaintiffs' property than the establishment of a *public alley*. There is evidence in the record to the contrary.

We have carefully read and considered the very able arguments made in the briefs but find ourselves unable to agree with the interpretations of the reservation made by defendant.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment for plaintiffs in accordance with the views expressed in this opinion. All concur.