**Herbert D. HOOKS, Jeannette Hooks, Barbara Roberts and Newell Roberts, Plaintiffs-Respondents,**

v.

**Margaret SPIES, Defendant-Appellant.**

No. 39552.

Missouri Court of Appeals, Eastern District, Division One.

May 29, 1979.

Thomas B. Burkemper, Troy, for defendant-appellant.

Jack Gallego, Troy, for plaintiffs-respondents.

SMITH, Judge.

Defendant appeals from an adverse judgment in a quiet title action. We affirm.

The land in question is a 17.34 acre tract in Lincoln County. For our purposes title commences with a deed for the land from Leon Lovell and Phyllis L. Lovell, his wife, to Millie Hermann, a single person, dated October 1, 1955. Millie Hermann was the secretary and straw party for Herbert D. Hooks, Sr. The Lovell deed described only the 17.34 acre tract. As straw party for Herbert D. Hooks, Sr., who invested in real estate, Millie Hermann also executed a deed of trust in June 1955 to Oliver Erbs as trustee and Emil Klaas and Lucille Klaas, his wife, and Charles Gillham and Virginia Gillham, his wife, the payees of certain notes. This deed of trust described the real estate covered by the deed of trust in detail. The land involved was for subdivision development and the deed of trust provided for release of portions of the land covered by the deed of trust upon payment of the notes covering such land. All the land covered by the deed of trust was located in Lincoln County. The 17.34 acres was not included in the land covered by the deed of trust. Following the death of Herbert D. Hooks, Sr., Millie Hermann executed, in June 1960, a quitclaim deed to Esther Hooks (Herbert's widow now deceased) a ½ interest, to Herbert D. Hooks, Jr. and Barbara Ann Zartman (now Roberts) (Herbert's children) a ¼ interest each in certain land in Lincoln County. The land conveyed was described in detail and included the 17.34 acres as well as all of the land covered by the deed of trust, plus some additional land. The quitclaim deed contained the following language:

"The intention of the undersigned Millie Hermann being to transfer title to any and all real estate owned by her in Lincoln County, Missouri, and it is hereby agreed that in the event any real estate now vested in her name in Lincoln County, Missouri, is not specifically above described, the same is nontheless hereby conveyed . . .

"Grantor further agrees to execute such further documents, instruments and conveyances as may be necessary to effectuate transfer from her to Grantees herein of all real estate owned by Grantor in Lincoln County, Mo.

"Those lots in the above described subdivisions which have heretofore been conveyed by Charles Gilham (sic) and Emil Klaas, and Millie Hermann, which conveyances are recorded in the Recorder's Office of Lincoln County, Missouri, are hereby excepted."

It is apparent, and Millie Hermann so testified, that the purpose and intent of the 1960 deed was to transfer all property which she held as a straw party for Herbert D. Hooks, Sr. to his heirs at law.

In July 1961 the notes secured by the 1955 deed of trust were in default and a trustee's sale was advertised. That advertisement specifically described the property to be sold and explicitly excluded those lots originally covered by the deed of trust which had been sold and released from the deed of trust. Since the 17.34 acres was not covered by the deed of trust, it, of course, was not described in the advertisement of trustee's sale.

On August 10, 1961, the deed which created this lawsuit was executed by the widow of Herbert D. Hooks, Sr. and his children and their spouses. That deed conveyed certain property to the Klaas', the Gillham's and a bank president (the assignee of the Klaas notes). The land conveyed was specifically described. The specific description was of the land covered by the deed of trust and the advertisement, and specifically excluded certain land which had been expressly excluded in the deed of trust and certain land "previously released of record." The 17.34 acres was not specifically described in the deed. The deed did, however, contain the following language:

"The intent and purpose of this Deed is to Quit Claim to grantees herein all real estate quit-claimed to parties herein by Millie Hermann by Quit-Claim Deed dated June 17, 1960 and recorded in Book 219 at page 597 in the Recorder's Office of Lincoln County, Mo., excepting therefrom those tracts, lots or parcels which had been released from the Deed of Trust held on said premises by Grantees herein. This instant Quit-Claim deed is likewise meant to convey those premises on which said Deed of Trust was foreclosed, said Deed of Trust being recorded in Book 190 at Page 597 in the Recorder's Office of Lincoln Co., Mo."

■ Defendant claims that the first clause of the first sentence served to convey the 17.34 acres to her claimed predecessors in title. In the view we take of this case it is unnecessary for us to examine the validity of defendant's chain of title from the grantees of the August 10, 1961 deed for we conclude, as did the trial court, that that deed did not convey title to the 17.34 acres.

■ The unambiguous language of the instrument governs over any extrinsic evidence of the parties' intent. If that language is clear and unambiguous, the intent is gathered from the instrument. "It is what the grantor said, and not what he intended to say." *White v. Meadow Park Land Co.,* 240 Mo.App. 683, 213 S.W.2d 123 (1948) [4–6]. *Bay v. Stout Sign Co.,* 301 S.W.2d 786 (Mo.1957) [1–4]; *Pfeiffer v. Pfeiffer,* 355 S.W.2d 934 (Mo.1962) [1–5].

■ Each case " 'must be considered apart from any other case in order to ascertain its meaning in the light of the facts as they were known and considered' by the grantor and auxiliary rules of construction should not be employed where the intention of the grantor is clearly expressed." *Knox College v. Jones Store Co.,* 406 S.W.2d 675 (Mo.1966) [5–7]. That intention should be ascertained from the whole instrument as gathered from the "everyday, good sense" of the language. *Knox College, supra.* [1–4].

■ Where, however, there is an ambiguity in the description of the land intended to be conveyed "the identity of the property must be gathered from the intention of the parties as shown by the instrument itself and the accompanying circumstances, such as those surrounding and connected with the parties and the land at the time. Words may, if necessary, be qualified by intendment, and particular clauses and provisions qualified, transferred, or rejected in order to ascertain the intention." *Ashauer v. Peer,* 147 S.W.2d 144 (Mo.App.1941) [2–4]. The court should assume the position of the parties to the deed as nearly as possible, consider the circumstances of the transaction and read and interpret the words used in that light. *Farrow v. Trickey,* 374 S.W.2d 49 (Mo.1963) [1–3]. And it was stated in *Leeper v. Leeper,* 347 Mo. 442, 147 S.W.2d 660 (1941):

"The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution and the subject matter and the situation of the parties as of that time." [5].

In arriving at our conclusion that the 1961 deed did not convey the 17.34 acres we note several matters. The specific description of the land conveyed did not include the 17.34 acres. That land is included only by reference to an expression of intention which in turn refers to two other documents. " 'Where the expression of the intent is doubtful and ambiguous, the most material and certain among the evidences of intent are to be selected and accredited. That which is most material and most certain in a description shall control that which is less material and less certain.' " *Wolf v. Miravalle,* 372 S.W.2d 28 (Mo.1963) [3]. The expression of intent is itself ambiguous. While it refers to "all real estate" in the quitclaim deed from Millie Hermann, it also refers to a deed of trust held by the grantees on "said premises". The referred to deed of trust did not cover the 17.34 acres nor did it cover an additional 60 acre tract of land conveyed in the Hermann deed. There was no deed of trust on all the "said premises" conveyed by the Hermann deed. Further the "intention" clause of the 1961 deed did not specifically convey all other land in the Hermann deed. The contrast between the "intention" clause in the 1961 deed and the Hermann deed is notable in this.

The circumstances surrounding the execution of the 1961 deed also indicate that it was not intended to include the 17.34 acre tract. The children of Herbert D. Hooks, Sr. and both Klaas' testified that the purpose of the deed was to convey to the holders of the notes secured by the deed of trust the property which had been foreclosed pursuant to that deed of trust and which was then awaiting a trustee's sale. The documentary evidence not only supports but compels the conclusion that that was the reason for the transaction. The Klaas' denied ever having any interest or claim to the 17.34 acres and denied that the deed which they received was intended to convey that land. Given this background it is apparent that the language of intention used in the deed was meant to encompass all of the various lots, plats, and acreage covered by the deed of trust but nothing else. Given the fact that the deed of trust covered a large collection of land, and that certain lots within the subdivisions had been excluded from the original deed of trust and other lots had been released from the deed of trust it is not surprising that a catch-all expression of intent was used. We find no evidence, however, that that ambiguously worded catch all was meant to cover any land not subject to the deed of trust. We find, as did the trial court, that in fact the intention of the parties to the deed, gleaned from the deed itself, the prior transactions, and the circumstances of the parties was to convey only the land subject to the deed of trust and was not to convey the 17.34 acres now in question.

Defendant also asserts that Sec. 516.010 R.S.Mo.1969 [1] bars the plaintiffs' action. The trial court found that defendant had failed to establish possession in her predecessor from 1963 to 1967 and that therefore she had failed to establish the affirmative defense. This finding is supported by the evidence. "Seisin" embraces both possession and title and "he who does not have both of these is not seised of the land." *Lasswell Land and Lumber Co. v. Langdon,* 204 S.W. 812 (Mo.App.1918) [2]. There was an absence of evidence of actual possession of the land in dispute by plaintiffs after 1963. However, where land is

1. "*Actions for recovery of lands commenced, when.*—No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person,

. . . unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

vacant or unoccupied by any person the constructive possession is held to have been with the owner of title. *Glasgow v. Missouri Car & Foundry Co.,* 229 Mo. 585, 129 S.W. 900 (1910) [1]. The owner of record title is presumed to have possession in the absence of evidence showing otherwise. *Huston v. Graves,* 213 S.W. 77 (Mo.1919) [4, 5].

Plaintiffs and their mother had record title and the evidence does not show possession in another until less than ten years prior to the filing of the action in 1976. The trial court did not err in finding that plaintiffs' suit was not barred by limitations.

Judgment affirmed.

SNYDER, P. J., and CRIST, J., concur.