Pauline ERWIN, Eugene H. Hinds, Clara June Hinds, Myrl B. Sternke and Mary R. Sternke, Appellants,

v.

CITY OF PALMYRA and Town and Country Butcher Shop, Inc. d/b/a Country Butcher Shop, Respondents.

No. ED 81699.

Missouri Court of Appeals, Eastern District, Northern Division.

Nov. 4, 2003.

Charles L. Hickman, Hannibal, MO, for respondent City of Palmyra.

John M. Hark, Hannibal, MO, for respondent Town and Country Butcher Shop.

Branson L. Wood, Hannibal, MO, for appellants.

## OPINION

GLENN A. NORTON, Judge.

Pauline Erwin, the Hinds and the Sternkes appeal the judgment in favor of the City of Palmyra and the Town and Country Butcher Shop, Inc., denying their petition for quiet title and trespass. We reverse and remand.

## I. BACKGROUND

The appellants own real estate in Palmyra. In 1962, they granted to the State Highway Commission[1] "and unto its suc-

1. The Commission was not a party to the underlying suit and is not a party to this appeal.

cessors and assigns, forever" an easement in a portion of their property "for the purpose of constructing and maintaining a state highway according to the plans of the State Highway Commission of Missouri or for the purposes above set out." This language is found in the preprinted habendum clause of the deed conveying the easement. The "purposes above set out" refers to language elsewhere in the deed describing the Commission's "right of ingress and egress and the right to excavate, remove and/or place earthy material in a tract of land on which a channel is to be constructed and maintained to aid the natural flow of water."

At the time the easement was granted, the Commission planned to build an interchange for improved access from Highway 61 to the City, but none was ever built. In 1999, the Commission conveyed a portion of this easement by quitclaim deed to the City, who then gave permission to the Butcher Shop to build a road on the property for improved access to its shop. When the appellants noticed dirt being moved on the property that fall, they approached the City and the Butcher Shop with their concerns that this construction was beyond the purposes of the easement they granted to the Commission in 1962. The City, the Butcher Shop and the Commission met to discuss the property owners' concerns and then amended the quitclaim deed to include a statement that the conveyance was "for roadway purposes." The Butcher Shop funded the construction, built the road to City specifications and plans to dedicate the road to the City. The road does not connect any portion of a state highway to another, was not constructed according to any Commission plans and is not maintained by the State. It connects city streets and, upon dedication, will be maintained by the City. The road is being used by the public.

The property owners filed a petition asserting two counts against the City and the Butcher Shop. In the first, they alleged that they owned the property and had conveyed an easement to the Commission, but that the Commission had no legal right to assign the easement for construction of this road. The property owners sought a judgment quieting title in the property to them and forever barring the City or the Butcher Shop from asserting rights to the property. In the second count, they alleged that the City and the Butcher Shop trespassed and asked for the street to be removed and for damages. After a bench trial, the court entered judgment in favor of the City and the Butcher Shop on both counts, finding that the easement was "assignable for road purposes" from the Commission to the City.

## II. DISCUSSION

■ On appeal of a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). All issues of fact about which the court has not made a specific finding are considered as having been found in accordance with the result reached. Rule 73.01.

### A. Quiet Title

■ The parties' rights to this property are governed by the 1962 easement. The interpretation of this deed, like any contract, is a question of law that we review *de novo* and without deference to the trial court's interpretation. *Holbert v. Whitaker*, 87 S.W.3d 360, 362 (Mo.App. E.D.2002); *see also Dean Machinery Co. v. Union Bank*, 106 S.W.3d 510, 520 (Mo. App. W.D.2003). When interpreting easements, we must ascertain the intention of

the grantor from the instrument itself. *Robert Jackson Real Estate Co., Inc. v. James,* 755 S.W.2d 343, 346–47 (Mo.App. E.D.1988); *Blackburn v. Habitat Development Co.,* 57 S.W.3d 378, 386 (Mo.App. S.D.2001). "[O]nly if the language of the deed is unclear and ambiguous" may we resort to rules of construction and consider extrinsic evidence. *James,* 755 S.W.2d at 347.

██ A contract is not ambiguous simply because the parties disagree about its meaning. *Blackburn,* 57 S.W.3d at 386. Rather, an ambiguity arises "when the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Chehval v. St. John's Mercy Medical Center,* 958 S.W.2d 36, 38 (Mo.App. E.D.1997). The ambiguity must appear from the four corners of the contract—extrinsic evidence cannot be used to create an ambiguity. *Blackburn,* 57 S.W.3d at 386.

██ We find no ambiguity in this deed and, thus, are limited to determining the property owners' intent from the deed alone. On its face, the easement clearly limits the purposes for which the property may be used to constructing a state highway according to Commission plans and a channel to aid water flow. There is only one reasonable meaning ascribable to those terms, and it does not include a grant to either the Commission or its successors and assigns the right to construct a roadway that is not a *state* highway constructed *according to Commission plans.*

██ The City and the Butcher Shop argue that because the easement was assignable, its purpose cannot be limited to construction of "state highways," which only the Commission can build. Thus, they contend, the grantors must have intended to allow construction of any public road. We disagree. First, the statutory definition of "state highway" includes not only highways constructed or maintained with State or federal government funds, but also "any highway included by authority of law in the state highway system." Section 226.010(7) RSMo 2000.[2] Thus, a road built by an assign of the Commission could be a "state highway," even though privately funded, if it were included in the state highway system. More importantly, to say that simply by extending an easement to the successors and assigns of the grantee, the grantors intended the easement to be used for purposes beyond those expressly stated in the deed would render the "purposes" language of the habendum clause meaningless. That construction is strained and unreasonable. Rather, the plain language of this deed evinces the grantors' intent that this property be used—whether by the successors and assigns of the Commission or by the Commission itself—only for the limited purpose of building a state highway according to Commission plans.

The City and the Butcher Shop assert that the Supreme Court in *Floreth v. State Highway Commission* held that the intent of the grantors under a virtually identical easement was to allow any public roadway and that *"state* highway" only meant to distinguish public from private roads. 472 S.W.2d 614, 617 (Mo.1971). *Floreth* did not so hold and does not support the respon-

---

2.  Laws in existence when a contract is made that affect its construction "become part of the contract as if they were expressly referred to or incorporated therein." *Halls Ferry Investments, Inc. v. Smith,* 985 S.W.2d 848, 851 (Mo.App. E.D.1998) (citing *Sharp v. Interstate Motor Freight System,* 442 S.W.2d 939, 945 (Mo. banc 1969)). All statutory references are to RSMo 2000.

dents' argument. There, the State Highway Commission had been given an easement "for the purpose of constructing and maintaining a State Highway on the land herein conveyed according to the plans of the State Highway Commission, ... and unto its successor and assigns forever." *Id.* at 615. The Commission constructed a state highway and in later years, when a part of the highway became impassable, it added a new section of roadway leading from the highway to a public lake. *Id.* The issue before the Court was whether the easement authorized the new section to be used as a public route from the highway to the lake. *Id.* at 616.

The Court first found that the "original immediate object of the grant was fulfilled" by construction of the state highway. *Id.* at 617. Moreover, because the new section of roadway was constructed at the state's expense, it too was a "state highway" within the statutory definition. *Id.; see also* section 226.010(7). "We do not believe that a roadway loses its status as a state highway merely because it no longer is a through or main highway." *Floreth,* 472 S.W.2d at 617. The respondents ignore this part of the Court's holding and focus instead on the remainder of the opinion, in which the Court discusses whether a change in the purpose a road serves causes the road to be any less of a public roadway. That latter part of the Court's opinion is wholly inapplicable to this case because, as the City and Butcher Shop admit, the road at issue here was never a "state highway." Thus, the *Floreth* Court's conclusion that "if the purpose of the easement is to permit a public roadway to be constructed on the land and if that is what the land is being used for, then the use is within the purpose of the grant" has no bearing on this case. *Id.* To say, as the respondents suggest, that in this sentence the Court held that the phrase "state highway" means any public roadway would be completely inconsistent with the statutory definition on which the Court relied.

■■■ In sum, this deed unambiguously limits the uses of the land subject to this easement to construction of a state highway according to Commission plans or a channel for water flow. The trial court erred in concluding that the easement was more broadly assignable for road purposes. As between the property owners, the City and the Butcher Shop, title should have been quieted in the property owners.[3]

■■■ The respondents argue that the quiet title action is barred by the doctrine of laches. That doctrine only applies to defeat equitable actions, not actions at law. *Marvin E. Nieberg Real Estate Co. v. Taylor–Morley–Simon, Inc.,* 867 S.W.2d 618, 626 (Mo.App. E.D.1993). Quiet title can be either an action at law or in equity depending on how the issues are presented by the pleadings and on the relief sought. *Massachusetts General Life Ins. Co. v. Sellers,* 835 S.W.2d 475, 482

---

**3.** On appeal, the property owners assert that the Commission has abandoned its easement rights and, thus, they own the property clear of any easements. This theory was not pled in their petition, nor argued at trial. Rather, they sought a determination of their title as superior to that of the City and the Butcher Shop, not to that of the Commission, which was not even a party to this action. A quiet title action is not designed to adjudicate the plaintiff's title as "superior to the whole world," but only as compared to the other parties. *See generally Ollison v. Village of Climax Springs,* 916 S.W.2d 198, 203 (Mo. banc 1996). Moreover, in the petition, they expressly alleged that they own the property subject to the Commission's 1962 easement, and the same was admitted at trial. Parties are bound on appeal to the theory pled at the trial. *Brandin v. Brandin,* 918 S.W.2d 835, 838 (Mo.App. E.D.1996).

(Mo.App. S.D.1992); *see also* section 527.150. Where, as here, a quiet title petition is in conventional form[4] and the petitioner does not seek any affirmative equitable relief, but only a determination of the existing title as between the litigants, then it is an action at law. *See id.* at 483. Thus, laches does not apply to this quiet title action.

### B. Trespass

The property owners have abandoned on appeal their trespass claim against the City and their request to have the road removed and ask only that we remand for a determination of damages resulting from the Butcher Shop's trespass. The Butcher Shop concedes that without the easement from the Commission it was not authorized to build this road and is liable for trespass, but argue that there was no evidence to support an award of more than nominal damages. Because the trial court never reached the issue of damages, we find it prudent to give the trial court the opportunity to make its findings and enter its judgment on that issue. *Franke v. Southwestern Bell Tel. Co.*, 479 S.W.2d 472, 478 (Mo.1972). Justice requires remand of this case. *See* Rule 84.14.

### III. CONCLUSION

The judgment is reversed and remanded for further proceedings consistent with this opinion.

SHERRI B. SULLIVAN, C.J. and WILLIAM H. CRANDALL, J., concurring.

---

4. *See* Form for Petition in Action to Determine and Quiet Title in STINSON, MAG & FIZZELL, MISSOURI PRACTICE—TRANSACTION GUIDE, section 17.21 (4th ed.2001).