

# Missouri Court of Appeals

## Southern District

### In Division

BEVERLY BARLOW,                )
                               )
   Respondent,                 )
                               )
   vs.                         )
                               )
SAXON HOLDINGS TRUST and ERIC  )
FARRAN and LEANN FARRAN as its )
Trustees,                      )
                               )
   Appellant.                  )

No. SD37361

**Filed: October 21, 2022**

APPEAL FROM THE CIRCUIT COURT OF WEBSTER COUNTY

Honorable Michael O. Hendrickson, Judge

## **AFFIRMED**

Saxon Holdings Trust ("Saxon") appeals the judgment in favor of Respondent Beverly Barlow ("Barlow") on her suit for declaration of title to a parcel of land claimed by both parties. The court held that Barlow has title both by deed and by adverse possession. We affirm the judgment of the trial court.

### **Factual and Procedural Background**

Barlow and her husband, Wayne,[1] purchased land in 1987 by warranty deed

---

[1] We refer to Barlow and Farran family members by their first names to distinguish between persons with the same last name. No familiarity or disrespect is intended.

("Barlow Deed"), which conveyed property described as follows:

> The W ½ of the SW ¼ of the SW ¼ of Section 13; the W ½ of the NW ¼ of Section 24; **also beginning at the NE corner of the E ½ of the NE ¼ of Section 23, running thence Southwesterly along the fence 40 rods, thence running South along the fence to a point on the South bank of the Finley Creek**, thence running Southeasterly to the SE corner of the SE ¼, NE ¼ of said Section 23, thence North on the Section line to the place of beginning, all being in Township 28, Range 17, Webster County, Missouri. (Emphasis added.)

An existing fence line ran north to south near the western edge of the Barlows' land, and the Barlows believed when they purchased the land that the fence marked the property line. Since 1987, the Barlows possessed and used the land up to the fence line for grazing cattle and putting up hay.

In 1992, the Barlows' son, Michael Barlow, purchased a tract of land bordering the Barlows' property on the west side. Like his parents, Michael used his land for grazing cattle and putting up hay. Michael and his daughter, Whitney, lived on his land. Whitney helped Wayne and Beverly on their farm when she was younger.[2] Michael and Wayne occasionally helped on each other's farms, but the two pieces of land were generally kept separate and their uses were not intermingled.

Michael passed away in 2011. Eric and LeAnn Farran purchased Michael's land at a foreclosure sale in 2013 and executed a warranty deed ("Saxon Deed"), conveying the land into Saxon, a trust for which the Farrans are trustees. The Saxon Deed described the land, in relevant part, as follows:

> The SE ¼ SE ¼ of Section 14, also a part of the E ½ of the NE ¼ of Section 23 described as follows: **beginning at the NE corner of the NE ¼ NE ¼ of said Section 23 and running SW 40 rods; thence due south to Finley Creek**; thence in a southeasterly direction to the SE corner of the SE ¼ NE ¼ . . . . (Emphasis added.)

---

[2] Wayne passed away in 2015. In 2019, Beverly executed a beneficiary deed to Whitney as grantee. The land described in the beneficiary deed is described identically in the Barlow Deed.

In the spring of 2020, Eric Farran viewed a plat map which indicated that the property line between the Saxon and Barlow farms was further east than the fence line. He then engaged a surveyor, Barry Mackey, who conducted a survey of the east boundary of the Saxon property. Mackey's survey concluded that the fence line was not the property line, as both landowners had previously assumed. Instead, Mackey found the property line was on the "40-rod line," a line due south from a point 40 rods southwest from the northeast corner of the Barlow land. After receiving the survey results from Mackey, Eric met with Beverly, Whitney, and the Barlows' family friend Denzel Young and informed them of the survey findings. In September 2020, Eric put up an electric fence along the 40-rod line in order to mark his claimed property. With this electric fence, the Farrans have denied the Barlows access to the land between the 40-rod line and the original fence.

Shortly after Eric put up the electric fence, Barlow engaged a different surveyor, Gary Drennan, to conduct his own survey of the Barlow land. Unlike Mackey, Drennan determined that the property line was on the original fence line, as the Barlows had always assumed. These conflicting surveys created an area of disputed property comprising approximately 7.5 acres between the original fence and the 40-rod line.

Barlow filed suit against Saxon in the Circuit Court of Webster County, seeking to quiet title to the disputed property. She also claimed title to the property through adverse possession. After a bench trial, the trial court entered judgment in favor of Barlow on both counts, finding the description of the property line in the deeds ambiguous and resolving that ambiguity in favor of Barlow. The trial court also found that Barlow had proven every element of adverse possession. Saxon appealed the judgment.

3

**Discussion**

Saxon presents three claims of error: (1) the trial court erred in finding ambiguity in the deeds and resolving the ambiguity in favor of Barlow[3], (2) the trial court erred in finding that Barlow proved each element of adverse possession by clear and convincing evidence, and (3) the trial court erred in finding adverse possession even though, according to Saxon, Barlow admitted Saxon's title to the disputed property.

*Existence of Ambiguity in the Deeds*

Whether a document is ambiguous is a question of law that is reviewed de novo on appeal. ***Denny v. Regions Bank***, 527 S.W.3d 920, 925 (Mo.App. 2017). A deed is ambiguous when its terms "are susceptible of more than one meaning 'so that reasonable persons may fairly and honestly differ in their construction of the terms.'" ***Hinshaw v. M-C-M Props., LLC***, 450 S.W.3d 823, 827 (Mo.App. 2014) (quoting ***Erwin v. City of Palmyra***, 119 S.W.3d 582, 585 (Mo.App. 2003)). An ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of language, i.e., if the language is reasonably open to different constructions. ***Ethridge v. TierOne Bank***, 226 S.W.3d 127, 131 (Mo. banc 2007). A document is not ambiguous merely because the parties disagree as to its construction. ***Id.***

Two types of ambiguities may arise in a document: a patent ambiguity and a latent ambiguity. ***Emerald Pointe, L.L.C. v. Jonak***, 202 S.W.3d 652, 659 (Mo.App. 2006). A patent ambiguity exists on the face of the document. ***Id.*** A latent ambiguity exists when

---

[3] Point One is multifarious in that it presents more than one claim of reversible error in a single point. Although we could deny the point on that basis, we exercise our discretion to review these arguments *ex gratia*. ***City of Joplin v. Wallace Bajjali Dev. Partners, L.P.***, 522 S.W.3d 327, 330-31 (Mo.App. 2017).

a writing is unambiguous on its face, but collateral matters render its meaning uncertain. ***Id.*** In the context of land deeds, a latent ambiguity exists when there is no uncertainty in the description of the land on the face of the deed, but an uncertainty "is shown to exist for the first time by matter outside the writing, when an attempt is made to apply the language to the ground." ***Becker v. Workman***, 530 S.W.2d 3, 6 (Mo.App. 1975).

Neither the Barlow Deed nor the Saxon Deed contains a patent ambiguity. The language of neither deed is ambiguous on its face, as neither contains terms that are plainly uncertain and neither is self-contradictory. At issue in this case is a latent ambiguity. The Barlow Deed's language describes the boundary at issue as "running thence Southwesterly along the fence 40 rods, thence running South along the fence to a point on the South bank of the Finley Creek . . . ." However, no fence runs south at the point 40 rods southwest from the starting point, nor is there evidence that there has ever been such a fence in that location. There is, though, a long-standing fence running south that begins further southwest than the 40-rod point, and this fence follows monuments on the ground from previous surveys. The Saxon Deed does not contain the "along the fence" call, but instead says "running SW 40 rods; thence due south to Finley Creek." The discrepancy between these deeds and the uncertainty in applying the Barlow Deed produces a latent ambiguity.

Ambiguity in a deed exists when reasonable persons may fairly disagree as to the construction of its terms. ***Hinshaw***, 450 S.W.3d at 827 That is the case here. Both parties commissioned surveys of the disputed property, and both surveyors testified at trial as to their conclusions. Surveyor Drennan, who was hired by Barlow, put a greater emphasis on the "along the fence" language and utilized prior survey markers and a 1934

5

survey of the land to inform his investigation. He ultimately found that Barlow's land extended to the fence line. Alternatively, Surveyor Mackey, who was hired by Saxon, focused more on the "40 rod" language and found the 1934 survey to be less informative. He determined that Barlow's land only extended to the 40-rod line. These two surveyors both have extensive training and experience in the field, both used accepted surveying techniques, and both relied on the same deed language. Yet, they came to different conclusions as to where the boundary between Barlow and Saxon's land is located. This demonstrates that reasonable persons may fairly disagree as to the construction of the Barlow Deed.

Saxon argues that a finding of ambiguity unreasonably ignores the 40-rod point and 40-rod line called out in both deeds. However, Saxon's preferred construction of the deeds would likewise ignore the "along the fence" language in the Barlow Deed. That each party's preferred construction creates tension between different terms in the deeds is a clear sign of ambiguity. Saxon also argues that no uncertainty results from the usage of "along the fence." It cites a dictionary definition of "along" as including "in parallel with the length or direction of, as in a ship sailing along the coast." But "along" can also be defined as "through, on, beside, over, or parallel to the length or direction of," as in: the chairs were lined up along the wall. RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 59 (2d ed. 2001). The various meanings of "along" give very different meanings to "along the fence," so we cannot fall back on a commonly accepted meaning of the words to declare a lack of ambiguity. The trial court did not err in finding an ambiguity in the legal descriptions.

*Trial Court's Resolution of the Ambiguous Deeds*

Although the existence of ambiguity in a deed is a question of law, the resolution of such ambiguity is a factual issue. ***Amusement Ctrs., Inc. v. City of Lake Ozark***, 271 S.W.3d 18 (Mo.App. 2008). In reviewing issues of fact, we must view the evidence in the light most favorable to the trial court's judgment, accept evidence favorable to the judgment as true, and disregard contradictory evidence. ***McElvain v. Stokes***, 623 S.W.3d 769, 773 (Mo.App. 2021). We "will affirm the trial court's determination 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" ***Id.*** at 772 (quoting ***Watson v. Mense***, 298 S.W.3d 521, 525 (Mo. banc 2009)).

When an instrument is ambiguous, a court may use parol evidence to interpret the meaning of the language in the instrument. ***Emerald Pointe***, 202 S.W.3d at 659. "If there is an ambiguity in a land description, 'the court should assume the position of the parties to the deed as nearly as possible, consider the circumstances of the transaction and read and interpret the words used in that light.'" ***Bass Pro Outdoor World, L.P. v. Wilson***, 965 S.W.2d 890, 893 (Mo.App. 1998) (quoting ***Hooks v. Spies***, 583 S.W.2d 569, 571 (Mo.App. 1979)). The "cardinal rule of construction is that a deed must be construed as nearly as may be by the parties' intentions . . . ." ***Jablonowski v. Logan***, 169 S.W.3d 128, 131 (Mo.App. 2005). A court may infer the parties' intent "from the instrument itself, the circumstances surrounding and leading up to execution of the instrument, and the subject matter and situation of the parties at the time." ***Denny***, 527 S.W.3d at 926. Other rules of construction may be used, including:

> (1) a particular or specific description of land in a deed ordinarily will prevail over a more general description, (2) in construing ambiguous

land descriptions in deeds, doubts should be resolved in favor of the grantee and against the grantor, (3) "possession by the grantee and payment of taxes thereon shows (sic) the lands intended to be conveyed," and (4) "where description of land is ambiguous but parties have occupied the property according to one construction, the courts will follow the construction and possession of the property even though for less than the period of limitation."

*Snadon v. Gayer*, 566 S.W.2d 483, 488-89 (Mo.App. 1978). However, these rules of construction will always yield to the intent of the parties where such intent can be ascertained. *Id.* at 489.

The trial court's resolution of the ambiguity in the deeds in favor of Barlow was supported by substantial evidence. When the Barlow Deed was executed, the fence along the disputed property was in place, and the Barlows believed that they had acquired all the property up to the fence. The Barlows possessed and used the disputed property continuously from the time they acquired their land, and neither the Farrans nor their predecessors in interest challenged the Barlow claim to the disputed property until recently. The court's judgment emphasized Barlow's longtime possession of the disputed land and stated that it found the survey and testimony by Surveyor Drennan to be credible. Such a finding of credibility is a matter for the trial court, which "is free to believe or disbelieve all, part or none of the testimony of any witness." *McElvain*, 623 S.W.3d at 772 (quoting *Watson*, 298 S.W.3d at 525). In resolving the ambiguity in favor of Barlow, the court considered "the evidence and testimony of the competing surveys and the deeds and circumstances under which the parties acquired their property . . . ." The judgment contained enough supporting evidence to satisfy the deferential standard of review. The trial court did not err in resolving the ambiguity in the legal description in favor of Barlow and in accordingly determining that Barlow has title by deed to the disputed property. Point I is denied.

8

Having found no error in the court's resolution of the ambiguous deed language, we need not address Saxon's challenges to the alternative ground for relief, adverse possession.  *See **Stacey v. Redford***, 226 S.W.3d 913, 919 (Mo.App. 2007).  Judgment affirmed.

JACK A. L. GOODMAN, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS